

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

**TAWANA C. MARSHALL, CLERK**
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed September 30, 2015

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| CLEMENTE BOTELLO, JR., § | CASE NO. 15-50135-RLJ-13 |
| § | |
| DEBTOR. § | |

### MEMORANDUM OPINION

Section 362(c)(3) of the Bankruptcy Code (11 U.S.C.) provides that if an individual files a second bankruptcy case within a year of having a prior case dismissed, the automatic stay that is imposed upon a bankruptcy filing terminates—*at least to some extent*—"on the 30th day after the filing of the later case." 11 U.S.C. § 362(c)(3)(A). If within the 30 days, however, such individual demonstrates that the second case was filed in good faith, the stay can be continued—*at least in part*. 11 U.S.C. § 362(c)(3)(B). The debtor here, Clemente Botello, Jr., moved for continuation of the stay, and hearing was held on the motion (with the Court extending the stay during the pendency of this matter).

### I.

Mr. Botello filed his first chapter 13 case—an emergency petition to prevent the

foreclosure of his home—on January 6, 2015 [No. 15-50004, Doc. No. 1].[1]  It was then dismissed on June 2, 2015, because he had defaulted in making payments to the trustee [*Id*., Doc. No. 38].  The dismissal was without prejudice to refiling.  In the five months between filing and dismissal of the first case, Mr. Botello's performance was spotty at best: his paperwork was either missing or filed late; his one and only payment came at the very last minute;[2] and he was a no-show at important hearings.[3]

On June 3, the day after dismissal of his first case, Mr. Botello filed this chapter 13 case [Doc. No. 1].  A week later, he filed his motion asking for a continuance of the automatic stay and expressing his intent to propose a "viable chapter 13 plan, in good faith, with the ultimate goals of curing his mortgage arrearage and receiving a chapter 13 discharge" [Doc. No. 8].  As this filing was within a year of the dismissal of his prior bankruptcy case, the automatic stay was set to terminate absent a motion and hearing.  *See* 11 U.S.C. § 362(c)(3)(B).  To obtain a continuance of the stay, Mr. Botello must demonstrate that this case was filed in good faith.  *Id.*  As relevant here, a presumption attaches—rebuttable only by clear and convincing evidence to the contrary—that the second filing is not in good faith if there has been no substantial change in his financial or personal affairs to suggest that he will fully perform the new plan.  *See* § 362(c)(3)(C)(i).

Mr. Botello testified at his hearing.  His testimony established that he has been doing the

---

[1] References to "Doc. No. __" herein refer to the docket entry number at which a pleading appears in the docket maintained by the Bankruptcy Court.  Unless otherwise indicated, the referenced docket entry number can be found in the underlying Case No. 15-50135.

[2] On February 11, the trustee filed a notice of intent to certify the case for dismissal due to non-payment [*Id.*, Doc. No. 20]; the certificate of non-compliance was entered on February 24 [*Id.*, Doc. No. 24].  The trustee withdrew the notice days later after receiving Mr. Botello's first and only payment [*Id.*, Doc. No. 25].

[3] Mr. Botello failed to show up for his April 1 meeting of creditors or his May 26 hearing on the motion to dismiss his case.

same contract work, hauling crude oil as an independent contractor, since before his first petition. He is paid 35% of what his truck brings in on revenue, or approximately $2,200-$3,000 every two weeks. If he is between contracts or heavy rains prohibit entry to the lease roads, he goes without a paycheck. He explained that is why he was unable to make his payments to the trustee: "I had missed a payment and got behind. That was a point where I was in between getting the contracts and I had some other financial stuff come up."[4]

Mr. Botello's schedules reveal very little change between the two filings. Most figures are the same, however income and proposed payments have decreased while the number of dependents and total liabilities have increased:

- The original Schedule J showed monthly expenses of $1,730, with net income of $2,520, and no dependents. His Schedule J for the current case shows the same amount for expenses, but with net income of $1,982, and three dependents (a wife, a stepson, and a step-granddaughter).

- The Summary of Schedules in his first case stated assets of $64,627 and liabilities of $116,759. The present case shows the same amount for assets and an increase in liabilities of $23,381 for a total of $140,140 (mostly from additional arrears on the mortgage and tax debt owed to the IRS).

- The monthly payments in the first case were $2,520 for sixty months, totaling $151,200. The current case proposes payments of $1,982 for months 1–2; $1,660 for months 3–6; $2351 for months 7–15; and $1,962 for months 16–60, totaling $120,066.

- As in his prior case, the plan here projects no dividend to unsecured creditors.

## II.

**A. The presumption of 11 U.S.C. § 362(c)(3)**

Mr. Botello's motion is filed under 11 U.S.C. § 362(c)(3), which controls for an

---

[4] Counsel pointed out that, in the present case, the numbers on the schedules were incorrect because he had only received the correct documents two days before the hearing. Mr. Botello said this was "because [he was] late in getting his stuff together." At the end of the hearing, Mr. Botello's counsel summarized that he felt Mr. Botello had "sufficient prospects to make this work, but he needs to cooperate more closely with counsel to get this done."

individual debtor who, within the preceding year, had a prior bankruptcy case dismissed. Approval for a § 362(c)(3) continuance requires application of three subsections, namely (c)(3)(A), (c)(3)(B), and (c)(3)(C). Section 362(c)(3)(A) warns of a termination of the automatic stay "with respect to the debtor on the 30th day after the filing of the later case." A debtor can, on motion and hearing, earn a continuance of the stay but "only if the [debtor] demonstrates that the filing of the later case is in good faith . . . ." § 362(c)(3)(B). This later filing "is presumptively filed not in good faith" if there has not been a "substantial change" in the debtor's financial or personal affairs since the dismissal of the previous case "or any other reason to conclude that the later case will be concluded . . . with a confirmed [chapter 13] plan that will be fully performed." § 362(c)(3)(C)(i)(III)(bb). The burden of proof to establish that there has been a change of circumstances is on the debtor because such facts "are peculiarly within [his] knowledge." *In re Charles*, 334 B.R. 207, 216–17 (Bankr. S.D. Tex. 2005).

After attaching, the presumption is only rebuttable "by clear and convincing evidence to the contrary." § 362(c)(3)(C). The clear and convincing evidentiary standard "lies somewhere between [a] preponderance and reasonable doubt." *In re Jenkins*, 435 B.R. 378, 384 (Bankr. N.D. Tex. 2010). Realization of the standard requires "produc[ing] in the mind of the trier of fact a firm belief or conviction . . . [with] evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Cruzan by Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 285 n. 11 (1990) (quotation omitted).

### B. *In re Charles* and testing good faith

To assist the good faith inquiry, courts in the Fifth Circuit employ a factors driven, totality of the circumstances test from *In re Charles*. *See, e.g., In re Jenkins*, 435 B.R. at 383

(adopting, after a thorough analysis of competing tests, "the standard set forth . . . in *In re Charles*"); *see also In re Wright*, 533 B.R. 222, 234 (Bankr. S.D. Tex. 2015) (agreeing that the factors in *Charles* "are appropriate in assessing whether a debtor can establish, by clear and convincing evidence, that his pending case is filed in good faith").  The court in *Charles* felt "obliged to implement Congress' intent." *In re Charles*, 332 B.R. at 542.  "Taken in context, Congress intended to direct the Court to conduct an early triage of refiled cases.  Debtors whose cases are doomed to fail should not get the benefit of an extended automatic stay." *Id.*  Even if the debtor establishes that the case *was* filed in good faith, the court in *Charles* noted that relief was still discretionary and the "movant must additionally demonstrate sufficient equitable factors . . . not delineated in the statute." *Id.* at 542–43.

Later courts following *Charles* have described it as "a two-part test with [an] objective test serving as a threshold test." *In re Jenkins*, 435 B.R. at 383.  The objective test weighs the odds that the debtor will successfully receive a discharge; a finding that such a feat would be unlikely "means that the case fails . . . and ends the inquiry." *In re Wright*, 533 B.R. at 234.  At that point, "[s]ubjective good faith is consequently irrelevant." *In re Collins*, 335 B.R. 646, 653 (Bankr. S.D. Tex. 2005).  If the debtor passes the threshold objective test, the court then applies a subjective, totality of the circumstances test to consider: (1) the nature of the debt; (2) the nature of the collateral; (3) the existence of any eve-of-bankruptcy purchases; (4) the debtor's conduct in the pending case; (5) the debtor's motivation to extend the stay; and (6) any other unique facts or circumstances relevant to the ultimate disposition. *In re Wright*, 533 B.R. at 234.

### C. Analysis

#### 1. Mr. Botello's second filing is presumptively not in good faith

Mr. Botello is unable to overcome a presumption of lack of good faith with his present

5

filing. He did not demonstrate any "substantial change in [his] financial condition or personal affairs . . . since the dismissal" of his previous case that would warrant confidence in his full performance of a confirmed plan. *See* § 362(c)(3)(C)(i)(III)(bb). His motion makes no mention of a substantial change in his personal affairs or any supporting factual allegations, as required by the local rules. N.D. Tex. L.B.R. 4001-1(f)(3)(E). Additionally, at the hearing, Mr. Botello testified that he has the same contract work he had before, subject to the same irregularities that plagued his prior case. The presumption that the present case is not filed in good faith attaches here, and it is "as though evidence has already been presented establishing that the case was not filed in good faith." *In re Thornes*, 386 B.R. 903, 907 (Bankr. S.D. Ga. 2007).

**2. Mr. Botello does not pass the good faith test**

Mr. Botello must pass the two-part test from *In re Charles* by a clear and convincing evidentiary standard for stay-continuance eligibility. The objective threshold test burdens Mr. Botello to demonstrate that his current case will likely end successfully, with a discharge. Only then will the Court apply the subjective totality of the circumstances test.

The evidence does not show that Mr. Botello's current case will result in a discharge. His prior case failed because he was "between . . . contracts and . . . some other financial stuff [came] up." He presented nothing concrete to demonstrate that in the present case he will not constantly find himself "between contracts" and unable to make the necessary payments. He did testify that he thought his career prospects "looked pretty good" because he had "picked up a lot of work." But optimism alone does not rise to the level of producing in the factfinder a clear conviction that financial troubles will not reoccur. His proposed payments leave no room for even minor financial disruptions. The payments range from $1,660 to $2,351 per month; his net income is only $1,982. He has three new dependents listed with no concomitant increase listed in his

monthly expenses. He provided no testimony regarding their ability to contribute. Finally, and most important, by the time of the hearing, Mr. Botello appeared to have little grasp of the scale of his obligations or the seriousness of his circumstance. When asked about the amount of his IRS debts, he replied that he was "not sure of the actual amount"—it is close to $19,000.[5] His response was similar when asked about how far behind he was on his mortgage payments: "About close to a year. . . . I couldn't tell you exactly. I'm not sure of the numbers." Mr. Botello is over $16,000 behind on a monthly mortgage of $462.[6]

### III.

Mr. Botello failed to meet his burden on the objective threshold test. Application of the subjective test is unnecessary. The automatic stay will terminate in accordance with and to the extent provided by § 362(c)(3)(A).[7]

### End of Memorandum Opinion ###

---

[5] On June 30, 2015, the Internal Revenue Service filed a proof of claim in the amount of $18,881.63 for tax years 2012–2014. Claim No. 3-1.

[6] Mr. Botello's Schedule D reflects mortgage arrears in the amount of $16,683.83. Doc. No. 18 at 8. His plan provides for ongoing mortgage payments of $461.81 per month. Doc. No. 28 at 2.

[7] There are different views concerning the extent to which the stay is terminated. Some courts have concluded that from a plain reading of the statute, the stay terminates as to the debtor and all *non-estate* property of the debtor, but not as to property of the estate. *See, e.g., In re Hale*, 535 B.R. 520, 528 (Bankr. E.D.N.Y. 2015); *In re Williford*, No. 13-31738, 2013 WL 3772840, *3 (Bankr. N.D. Tex. July 17, 2013). Taking a more holistic view of the statute and finding support in legislative history, a few courts have concluded that the stay terminates entirely. *See, e.g., In re Daniel*, 404 B.R. 318 (Bankr. N.D. Ill. 2009).